**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| YONGQIAN ZHAO,<br>Derivatively on Behalf of<br>ACCRETIVE HEALTH, INC.<br><br>Plaintiff,<br><br>vs.<br><br>MARY A. TOLAN, J. MICHAEL CLINE,<br>EDGAR M. BRONFMAN, JR., STEVEN N.<br>KAPLAN, STANLEY N. LOGAN, DENIS J.<br>NAYDEN, ARTHUR H. SPIEGEL, III<br>and MARK A. WOLFSON<br><br>Defendants,<br><br>and<br><br>ACCRETIVE HEALTH, INC.,<br><br>Nominal Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO: _____<br><br><br>**JURY TRIAL DEMANDED** |

**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

Plaintiff, by and through his undersigned attorneys, brings this Verified Shareholder Derivative Complaint ("Complaint") in the name of and on behalf of nominal Defendant Accretive Health, Inc. ("Accretive Health" or "Accretive" or the "Company") against certain directors and officers of Accretive named herein. Plaintiff bases his allegations on personal knowledge as to his own acts, and on information and belief as to all other allegations, based on investigation by counsel, including: (a) review and analysis of public filings made by Accretive and other persons with the Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications caused to be disseminated by certain of the

1

Defendants and other persons; (c) review of news articles, shareholder communications, and postings on Accretive' website concerning the Company's public statements; and (d) review of other publicly available information concerning Accretive and other persons.

## SUMMARY OF THE ACTION

1.     This is a shareholder derivative action brought by the shareholders of Accretive on behalf of the Company against certain of its officers and directors seeking remedies for the Defendants' violations of state law, including breach of fiduciary duties and abuse of control, which have caused substantial monetary losses to Accretive and other damages, including damages to its reputation and goodwill.  On Accretive's behalf, this action seeks damages and corporate governance reforms.

2.     Accretive provides revenue-cycle management services for health-care providers in the United States.  As part of its operations, Accretive assists hospitals in collecting payment from former and current hospital patients.

3.     On January 12, 2012, Minnesota's Attorney General sued Accretive Health, alleging in part that Accretive violated state debt-collection laws, state consumer-protection laws, and health-privacy laws such as the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") Privacy Rule.

4.     One of Accretive's largest clients, Fairview Health Services ("Fairview"), operates eight hospitals in the Twin Cities area of Minnesota.

5.     On March 29, 2012, Accretive filed a Form 8-K with the SEC.  This 8-K revealed that, due to the lawsuit filed by the Minnesota Attorney General, Accretive would be transferring its debt-collection operations to Fairview; this transfer would reduce Accretive's fiscal year 2012 income by $62-$68 million.

2

6.     On this news, Accretive Health plunged nearly 19% in a single trading day, declining $4.46 per share to close at $19.60.

7.     Further, on April 24, 2012, the Minnesota Attorney General issued a scathing report on Accretive Health's debt-collection practices, highlighting shameful misconduct by Accretive, including that Accretive demanded payment in advance from emergency-room patients and conducted abusive practices in cancer wards.

8.     Additionally, according to the Attorney General's report, Accretive employees accessed private health-care information for use in pressuring patients to pay past due bills.

9.     Following the release of the Attorney General's information, on April 25, 2012, Accretive's stock price again tumbled precipitously, losing $7.63 per share to close at $10.86 per share, a one-day decline of 41%.

10.     The Individual Defendants knew, recklessly or in bad faith disregarded, or otherwise should have known that Accretive was operating in ways that violated federal and state law thereby exposing the Company to significant monetary damages, reputational harm, and loss of goodwill.

## JURISDICTION AND VENUE

11.     This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. All Defendants are completely diverse from Plaintiff and the amount in controversy exceeds $75,000.00.

12.     The Court has personal jurisdiction over each of the Defendants because each Defendant is either a corporation that conducts business in and maintains operations in this district or is an individual who either is present in this district for jurisdictional purposes or has

sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because:  (i) one or more of the Individual Defendants either resides in or maintains executive offices here; (ii) a substantial portion of the transactions and wrongs complained of herein occurred here; and (iii) the Individual Defendants have received substantial compensation and other transfers of money here by doing business here and engaging in activities having an effect here.

## PARTIES

**A.      Plaintiff**

14.     Plaintiff Yongqian Zhao is, and at all times relevant herein has been, an owner and holder of Accretive Health common stock.  Zhao is a citizen of Massachusetts.

**B.      Nominal Defendant**

15.     Nominal Defendant, Accretive Health, Inc., is a corporation organized under the laws of the State of Delaware, which maintains its principal place of business at 401 North Michigan Avenue, Suite 2700, Chicago, Illinois 60611.

**C.      Individual Defendants**

16.     Defendant Mary A. Tolan ("Tolan") is a co-founder of Accretive Health, and has served as the Company's President, Chief Executive Office,r and director since November 2003. In 2011, Tolan received compensation in excess of $3.6 million.  Tolan is a citizen of Illinois.

17.     Defendant J. Michael Cline ("Cline") is a co-founder of Accretive Health and has been an Accretive director since August 2003.  Cline has served as chairman of the Board since July 2009.  He is a member of the Compensation Committee and the Nominating and Corporate

4

Governance Committee. In 2012, Cline will receive compensation in the amount of $178,354.00. Cline is a citizen of Illinois.

18. Defendant Edgar M. Bronfman Jr. ("Bronfman") has been an Accretive director since October 2006. Bronfman is a member of the Compensation Committee, and the Chairman of the Nominating and Corporate Governance Committee. In 2012, Bronfman will receive compensation in the amount of $163,354.00. Bronfman is a citizen of New York.

19. Defendant Steven N. Kaplan ("Kaplan") has been an Accretive director since July 2004. Kaplan is the Chairman of the Compensation Committee and a member of the Nominating and Corporate Governance Committee. In 2012, Kaplan will receive compensation in the amount of $173,354.00. Kaplan is a citizen of Illinois.

20. Defendant Stanley N. Logan ("Logan") has served as an Accretive director since April 2011. Logan is Chairman of the Audit Committee. In 2012, Logan will receive compensation in the amount of $114,860.00. Logan is a citizen of Illinois.

21. Defendant Denis J. Nayden ("Nayden") has served as an Accretive director since October 2003 and served as co-chairman of the Board until July 2009. Nayden is a member of the Compensation Committee. In 2012, Nayden will receive compensation in the amount of $163,354.00. Nayden is a citizen of Rhode Island.

22. Defendant Arthur H. Spiegel, III ("Spiegel") has served as an Accretive director since October 2003 and served as co-chairman of the Board until July 2009. Spiegel is a member of the Compensation Committee. In 2012, Spiegel will receive compensation in the amount of $158,354.00. Spiegel is a citizen of New York.

23.     Defendant Mark A. Wolfson ("Wolfson") has served as an Accretive director since October 2003.  Wolfson is a member of the Audit Committee.  In 2012, Wolfson will receive compensation in the amount of $158,354.00.  Wolfson is a citizen of California.

24.     The Defendants referred to in paragraphs 16 through 23 are collectively referred to hereinafter as the "Individual Defendants."

**D.     Directors Not Named As Defendants**

25.     George P. Schultz ("Schultz") is an Accretive director emeritus, and has been since September 2011.  According to Accretive's 2012 Proxy Statement, Schultz is not entitled to a vote on matters that come before the Board, nor does he have the power or responsibilities of a director.

**GENERAL FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS**

26.     Each of the Individual Defendants had and has stringent fiduciary obligations to Accretive and its shareholders.  As officers, directors, and fiduciaries of Accretive and because of their ability to control the business and corporate affairs of Accretive, the Individual Defendants owed fiduciary obligations of loyalty, good faith, due care, disclosure, candor, and oversight, to Accretive and its shareholders and were and are required to use their utmost ability to control and manage Accretive in a fair, just honest, and equitable manner.  The Individual Defendants were or are required to act in furtherance of the best interests of Accretive and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

27.     Each director and officer of Accretive owes to Accretive and its shareholders the fiduciary duty to exercise good faith, loyalty, and diligence in the administration of Accretive's affairs, and in the use and preservation of its property and assets, and to uphold the highest

obligations of fair dealing. In addition, as officers and directors of a publicly held company, the Individual Defendants had a duty of due diligence to oversee that the Company was complying with government regulations and to disseminate accurate information with regard to the Company's compliance.

28.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Accretive, were able to, and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

29.     The Individual Defendants were, while directors and/or officers of Accretive, agents of other Individual Defendants who were directors at the same time, and of Accretive, and were at all times acting within the course and scope of such agency.

30.     To discharge their duties, the officers and directors of Accretive were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the operational affairs of Accretive. By virtue of such duties, the officers and directors of Accretive were required to, among other things:

- ensure that Accretive complied with its legal obligations and requirements, including acting within the scope of its legal authority, and complying with state and federal regulations regulations, and disseminating truthful and accurate statements to the SEC and shareholders;

- conduct Accretive's affairs in an efficient, businesslike manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Accretive's assets, and to maximize Accretive's value;

- properly and accurately guide shareholders and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results, prospects, and risks thereto;

- remain informed as to how Accretive conducted its operation, and upon receipt of notice or information regarding imprudent or unsound

conditions or practices, make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws;

- ensure that Accretive was operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state, and local laws, rules, and regulations.

31.     Each of the Individual Defendants, by virtue of his position as a director and/or officer, owed or owes to the Company and to its shareholders the fiduciary duties of loyalty, good faith, due care, disclosure, candor and oversight in the management and administration of Accretive's affairs, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Accretive, the absence of good faith on their part, and a reckless disregard for their duties to Accretive and to its shareholders. Defendants were aware, or should have been aware, that those violations, absences of good faith, and reckless disregard of duties posed a significant risk of serious injury to Accretive.

32.     The Individual Defendants breached their duties of loyalty and good faith by allowing Accretive to disregard state and federal rules and regulations which have led to investigations by the Minnesota Attorney General. Because of their positions with the Company, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed and were being concealed from the public. Due to their acts and omissions during the Relevant Period, Accretive has been subject to a lawsuit filed by the Minnesota Attorney General and securities fraud suits filed by shareholders. As a result of this misconduct, Accretive has expended, and will continue to expend, significant sums of money.

## SPECIFIC FIDUCIARY DUTIES OF THE DEFENDANTS

### Duties Defined in Accretive's Corporate Governance Guidelines

33.     In addition to the duties summarized above, Accretive's Corporate Governance Guidelines also imposed specific duties on the Individual Defendants.  For example, Accretive's Corporate Governance Guidelines requires that each of Accretive's directors shall follow the following guidelines, among others:

- Oversee Management of the Company.  The principal responsibility of the directors is to oversee the management of the Company and, in so doing, serve the best interests of the Company and its stockholders. This responsibility includes:

  - Reviewing and approving fundamental operating, financial and other corporate plans, strategies and objectives.

  - Evaluating the performance of the Company and its senior executives (in consultation with the Chief Executive Officer, in the case of all senior executives other than the Chief Executive Officer) and taking appropriate action, including removal, when warranted.

  - Evaluating whether corporate resources are used only for appropriate business purposes.

  - Establishing a corporate environment that promotes timely and effective disclosure (including robust and appropriate controls, procedures and incentives), fiscal accountability, high ethical standards and compliance with all applicable laws and regulations.

  - Developing a corporate governance structure that allows and encourages the Board to fulfill its responsibilities.

  - Providing advice and assistance to the Company's senior executives.

  - Evaluating the overall effectiveness of the Board and its committees.

- Exercise Business Judgment.  In discharging their fiduciary duties of care, loyalty and candor, directors are expected to exercise their

business judgment to act in what they reasonably believe to be the best interests of the Company and its stockholders.

- <u>Understand the Company and its Business</u>. Directors have an obligation to become and remain informed about the Company and its business, including the following:

    o The principal operational and financial objectives, strategies and plans of the Company.

    o The results of operations and financial condition of the Company and of significant subsidiaries and business segments.

    o The relative standing of the business segments both within the Company and as compared to competitors.

    o The factors that determine the Company's success.

    o The risks and problems that affect the Company's business and prospects.

- <u>Establish Effective Systems</u>. Directors are responsible for determining that effective systems are in place for the periodic and timely reporting to the Board on important matters concerning the Company, including the following:

    o Current business and financial performance, the degree of achievement of approved objectives and the need to address forward-planning issues.

    o Future business prospects and forecasts, including actions, facilities, personnel and financial resources required to achieve forecasted results.

    o Compliance programs to assure the Company's compliance with law and corporate policies.

    o Material litigation and governmental and regulatory matters.

- Directors should also periodically review the integrity of the Company's internal control and management information systems.

**Duties Defined in Accretive's Code of Business Conduct and Ethics**

34.     Accretive's Code of Business Conduct and Ethics is intended to deter wrongdoing and to promote the conduct of all Company business in accordance with high standards of integrity and in compliance with all applicable laws and regulations.  The Code of Business Conduct provides that each member of Accretive's management, its executives, and its directors has the following duties, among others:

- **Compliance with Laws, Rules and Regulations**

  o The Company requires that all employees, officers and directors comply with all laws, rules and regulations applicable to the Company wherever it does business.  You are expected to use good judgment and common sense in seeking to comply with all applicable laws, rules and regulations and to ask for advice when you are uncertain about them.

  o If you become aware of the violation of any law, rule or regulation by the Company, whether by its officers, employees, directors, or any third party doing business on behalf of the Company, it is your responsibility to promptly report the matter to your supervisor or to the General Counsel.  Employees, officers and directors shall not discharge, demote, suspend, threaten, harass or in any other manner discriminate or retaliate against an employee because he or she reports any such violation, unless it is determined that the report was made with knowledge that it was false.  This Code should not be construed to prohibit you from reporting any illegal activity to the appropriate regulatory authority or from testifying, participating or otherwise assisting in any state or federal administrative, judicial or legislative proceeding or investigation.

- **Protected Health Information**

  o Employees must become familiar with and abide by the relevant laws and regulations related to the transmission, privacy and security of Protected Health Information (PHI), including but not limited to:

    ▪ the Health Insurance Portability and Accountability Act of 1996 (HIPAA);

- federal regulations adopted under HIPAA related to the proper use and disclosure of PHI (the Privacy Rule), the security of PHI in electronic form (the Security Rule) and the transmission of electronic health-care transactions in standard forms and formats (the Transactions Rule); and

- state laws, regulations and legal standards related to patient privacy and information security in states in which the Company's customers operate.

- **Confidentiality**

  o Employees, officers and directors must maintain the confidentiality of confidential information entrusted to them by the Company or other companies, including our suppliers and customers, except when disclosure is authorized by a supervisor or legally mandated.

  o Unauthorized disclosure of any confidential information is prohibited. Additionally, employees should take appropriate precautions to ensure that confidential or sensitive business information, whether it is proprietary to the Company or another company, is not communicated within the Company except to employees who have a need to know such information to perform their responsibilities for the Company.

- **Honest and Ethical Conduct and Fair Dealing**

  o Employees, officers and directors should endeavor to deal honestly, ethically and fairly with the Company's suppliers, customers, competitors and employees. Statements regarding the Company's products and services must not be untrue, misleading, deceptive or fraudulent.

  o You must not take unfair advantage of anyone through manipulation, concealment, abuse of privileged information, misrepresentation of material facts or any other unfair-dealing practice.

- **Protection and Proper Use of Corporate Assets**

  o Employees, officers and directors should seek to protect the Company's assets, including proprietary information. Theft, carelessness and waste have a direct impact on the Company's financial performance. Employees, officers and directors must use the Company's assets and services solely for legitimate business

purposes of the Company and not for any personal benefit or the personal benefit of anyone else.

## FACTUAL ALLEGATIONS

35.     Accretive provides services for health-care companies and hospitals, optimizing revenue cycles through patient registration, insurance and benefit verification, medical treatment documentation, bill preparation and collections.

36.     Accretive generates revenue through a unique model; when a client initially retains Accretive, Accretive charges that client a fee which equates the client's existing billing department expense; thereafter, Accretive earns 75% of the client's savings.

37.     Accretive employees review data regarding each patient treated by the health-care company.

38.     In 2010, Accretive debuted its newest client savings initiative, the Quality and Total Cost of Care ("QTCC") contract. Pursuant to the QTCC contract, Accretive assisted health-care companies in negotiating their contracts with insurance companies and HMOs, through the use of risk modeling on the *six sigma* model.

39.     Fairview was the first health-care company to sign a QTCC contract with Accretive. Under the QTCC, Accretive and Fairview would divide savings resulting from reduced health-care costs.

40.     Fairview is one of Accretive's largest clients; for 2010 and 2011, Fairview accounted for 10.7% and 12.2%, respectively, of Accretive Health's total net services revenue.

41.     Through its contract with Fairview, Accretive put in place a number of measures designed to reduce health-care costs; including:

     (a)     Offering patients who called to schedule an appointment with a practicing physician phone consultations with nurse practitioners as an alternative;

     (b)     Reducing emergency room admissions by compiling a list of frequent users of emergency room services, and devising methods to limit the use of emergency services by these patients; and

     (c)     Targeting efforts to reduce care amongst the 5% of the population that consumes 50% of the health-care costs.

42.     Accretive touted the potential profitability of the QTCC program.  Accretive's 2011 Annual Report predicted some $60 million in annual revenue arising from Fairview alone, stating in pertinent part:

> By way of example, we generally expect that the annual revenues for our revenue cycle management services at contract maturity (which is generally reached in three and one-half to four years) for a representative hospital customer with $1 billion in net patient revenues will be approximately 5% of the provider's net patient revenue, or approximately $50 million, consisting of $40 million of base fees, net of cost savings shared with the customer, and $10 million of incentive fees. For the same representative hospital customer for our quality and total cost of care service offering, which we introduced in 2010, we currently expect that the annual revenues will be approximately $60 million, consisting of up to $10 million in base fees and up to $50 million in incentive fees.

43.     Accretive hid from investors that this revenue was being generated through the use of cost-reduction tactics that violated federal and state law.  As detailed in the Minnesota Attorney General complaint against Accretive, such improper tactics included:

     (a)     Instructing hospital employees to get payment for emergency room treatment before care is rendered;

     (b)     Instructing hospital employees to confront patients at bedside to inquire about payment;

(c)     Inducing hospital employees to collect balances from prior treatments at the time that current treatments are taking place;

(d)     Using HIPAA-protected patient records to collect due and owing medical debts;

(e)     Emailing hospital management personnel that "Any free time … should be spent rounding with staff and making sure they are … asking for money from EVERY patient they can;" and

(f)     Hospital employees were rewarded by Accretive for collecting revenues and data, including collecting information from newborns and their mothers for future collection efforts.

44.     The Accretive Board was briefed on these tactics in 2010 and 2011, and—after being advised that the QTCC would cut a half billion dollars of patient costs at Fairview, resulting in large incentive payments (payments made by insurance companies to health-care providers for reducing patient costs), with a proportion of these payments flowing to Accretive under the QTCC—approved or knowingly acquiesced in the tactics.

45.     These tactics have resulted in a lawsuit filed by the Minnesota Attorney General's office against Accretive, including allegations that these tactics and others violate a host of federal and state laws, including the Equal Credit Opportunity Act, the Fair Debt Collections Practices Act, and Minnesota state consumer protection laws.

46.     On March 29, 2012, Accretive filed a Form 8-K with the SEC, announcing that the Company, as part of an "ongoing effort to resolve its outstanding issues with the Minnesota Attorney General," would, in agreement with Fairview, "amend their revenue cycle operations agreement to transition the management of those operations to Fairview leadership."

47.    In addition, the 8-K stated that "Accretive Health expects the revenue impact of the new revenue cycle operations arrangement with Fairview to be in the range of $62 million to $68 million, or approximately 6% of the company's expected 2012 revenue."

48.    Upon the release of the 8-K, Accretive common shares declined precipitously, declining 18.5% to close at $19.60, a loss of $4.46 per share.

49.    On the evening of April 24, 2012, the Minnesota Attorney General released a six-volume report detailing Accretive's violations of state and federal law.  The Wall Street Journal provided a succinct analysis of the Attorney General's report:

> Minnesota Attorney General Lori Swanson released a raft of new allegations against revenue-manager Accretive Health Inc. (AH), sending its shares plummeting Wednesday.
>
> Shares closed down 42% at $10.75 after the state official accused the company of overly aggressive debt-collection tactics, calling it an "India-outsourced uber-collection agency."
>
> An Accretive spokeswoman declined to comment on the company's share price but said the company has "a great track record of helping hospitals enhance their quality of care."
>
> Oppenheimer & Co. analyst Bret Jones said investors reacted out of concern that added pressure from Minnesota's latest report might force Accretive to more broadly change the way it helps hospitals collect revenue from patients.
>
> "There is the concern that this is going to spread and that other attorneys general are going to look at them," Jones said.  "The issue comes down to, are they going to change their business practices?"
>
> Swanson in January filed a complaint against Accretive accusing the company of overly aggressive collection tactics in emergency rooms, cancer wards and delivery rooms at hospitals run by Fairview Health Services.  The attorney general is also suing the company for alleged violations of U.S. and state patient-privacy and debt-collection laws.
>
> This week, the attorney general's office detailed findings from a lengthy review of the company's compliance with a state law governing non-profit entities like Fairview, suggesting the for-profit debt collector changed the culture at the

hospital for the worse. Accretive last month said it would lose about 6% of its revenue this year by ceding some of its arrangements with Fairview.

50. Upon the release of the Attorney General's report, Accretive's common share price dropped, declining over 41% to close at $10.75, a loss of $7.74 per share.

51. The Individual Defendants knew, recklessly or in bad faith disregarded, or otherwise should have known that Accretive was operating in ways that violated federal law and the laws of various states, and thereby exposed the Company to significant monetary damages, reputational harm, and loss of goodwill, in violation of their duties owed to the Company and its shareholders.

## DERIVATIVE ALLEGATIONS

52. Plaintiff brings this action derivatively in the right and for the benefit of Accretive to redress injuries suffered, and to be suffered, by Accretive as a direct result of the violations of state law, including breaches of fiduciary duty, abuse of control, and gross mismanagement by Defendants.

53. Accretive is named as a nominal defendant in this case solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have. Plaintiff was a shareholder of Accretive at the time of the transgressions of which he complains. Plaintiff will adequately and fairly represent the interests of Accretive and its shareholders in prosecuting and enforcing their rights. Prosecution of this action, independent of the current Board of Directors, is in the best interests of the Company.

54. The wrongful acts complained of herein subject, and will continue to subject, Accretive to continuing harm because the adverse consequences of the actions are still in effect and ongoing.

55.     The wrongful acts complained of herein were unlawfully concealed from Accretive shareholders.

## DEMAND IS FUTILE AND THEREFORE EXCUSED

56.     Demand upon the Accretive Board that they institute this action in the Company's name would be entirely futile, and is therefore excused.

57.     The Accretive Board is comprised of eight individuals, Defendants Mary Tolan, Edgar M. Bronfman, Jr., Michael Cline, Steven M. Kaplan, Stanley M. Logan, Denis J. Nayden, Arthur H. Spiegel III, and Mark A. Wolfson.  George P. Schultz is an ostensible ninth member, but serves as director emeritus, and as such, no longer has the powers or responsibilities of a Board member.

58.     Defendant Tolan as CEO and the remainder of the Board were responsible for ensuring that the Company's compliance with federal and state law.  Therefore, there is significant reason to doubt that the Board is disinterested because they face a substantial likelihood of liability for their breaches of fiduciary duties, including their duties of good faith, fair dealing and loyalty, as well as other violations of law.  As such, the Board is not disinterested or independent, and is not capable of responding adequately to a demand.  Demand on them is therefore excused.

59.     Defendant Tolan, as CEO and President of Accretive, received and continues to receive a lavish salary, stock option awards and other benefits.  In 2011, Tolan received in excess of $3.6 million in compensation.  Tolan depends for her livelihood upon her position with Accretive, and is conflicted from objectively considering a pre-suit demand.

60.     The Accretive Board is dominated and controlled by wrongdoers who continue to obscure their own misconduct, and will not take action to protect the interests of Accretive or its shareholders.

61.     The present Board of Directors of Accretive has ratified the illegal and improper conduct at the Company, including at meetings where Accretive's debt-collection tactics were discussed, and each has refused, and will continue to refuse, to institute this action for the foregoing and following reasons:

(a)     The acts complained of herein constitute violations of fiduciary duties owed by the Board of Directors and these acts are incapable of ratification;

(b)     Certain of the known principal wrongdoers and beneficiaries of the wrongdoing complained of herein, including defendant Tolan, are in a position to, and do, dominate and control the Board of Directors.  Thus, the Board could not exercise independent objective judgment in deciding whether to bring or vigorously prosecute this action;

(c)     The acts complained of herein are illegal and improper and thus are acts incapable of ratification;

(d)     In order to bring this action for breach of fiduciary duty, and the other claims alleged, the members of the Board of Directors would have been required to sue themselves and/or their fellow directors and allies in the top ranks of the Company, who are their good friends and with whom they have entangling financial alliances, interests, and dependencies, which they would

not do.  They therefore would not be able to vigorously prosecute any such action;

(e)     The members of the Accretive Board, including each of the Individual Defendants, receive substantial salaries, bonuses, payments, benefits, and other emoluments by virtue of their membership on the Board and their control of Accretive.  They have thus benefited from the wrongs herein alleged and have engaged therein to preserve their positions of control and the perquisites thereof, and are incapable of exercising independent objective judgment in deciding whether to bring this action.  The Board members also have extra-corporate entanglements or other entanglements as members of overlapping committee positions with one another and are, consequently, interested parties and cannot in good faith exercise independent business judgment to determine whether to bring this action against themselves; and

(f)     Accretive's Governance Documents provide for indemnification to members of the board of directors.  Thus, the Individual Defendants herein may use the funds of Accretive to immunize themselves from any wrongful conduct.

62.     Plaintiff has not made any demand on the Accretive's Board to institute this action, since such demand would be a futile and useless act because the wrongful acts complained of show a wholesale abandonment by the Individual Defendants of their fiduciary duties of due care and oversight.  Such abandonment includes, but is not limited to:

20

      (a)      allowing the Company to become engaged in and/or suspected of potentially illegal and fraudulent activities, and ratifying such illegal and improper conduct;

      (b)      allowing for inadequate controls over the Company's policies and practices with hospital activities; and

      (c)      ignoring conduct in violation of federal and state law.

63.      These acts, and the other improper acts set forth herein, which demonstrate a pattern of misconduct, were not, nor could they have been, the product of a valid or good faith exercise of business judgment.

64.      As detailed above, the Board was directly involved in the misconduct challenged in this action, by virtue of their respective positions, or they completely abdicated their responsibility to oversee the Company's operations and let management run roughshod over the Company for their personal gain and causing the Company to engage in illegal and/or improper conduct that leave it potentially liable for civil fines and criminal penalties.  The Individual Defendants' conduct lacked any legitimate business purpose and was not a product of a valid exercise of business judgment.  As such, demand is excused as futile.

65.      In addition to the foregoing, Defendant Tolan lacks independence and she will take no action against the Board, and they will take no action against her, because Defendant Tolan is a co-founder, the Chief Executive Officer and a Director, and dominated and controlled the Company, and who continues to dominate and control the Company as a result of her role as leading Board member of the Company.

66.      By virtue of their positions on the Board, all of the Individual Defendants, either knew of should have known about the improper marketing practices of the Company and its

agents, or they abdicated all oversight over the policies and practices of the Company, which created an environment in which the senior management could implement policies that placed the success and growth of the Company upon improper marketing practices. Therefore, Tolan, and current members of the Accretive Board are either directly responsible for the Company's practices or were derelict in carrying out the express oversight duties with which they were charged. As such, demand is excused as futile.

67. Directors Edgar M. Bronfman, Jr. and J. Michael Cline are incapable of considering pre-suit demand objectively, because they have significant personal and social interactions with each other, arising out of their directorships at Endeavor Global Incorporated.

68. Directors J. Michael Cline and Arthur H. Spiegel, III are incapable of considering pre-suit demand objectively, because they have significant personal, financial, and social interactions with each other, arising out of their directorships at Accolade Incorporated.

69. Directors Denis J. Nayden and Mark A. Wolfson are incapable of considering a pre-suit demand objectively, because they have significantly intertwined financial interests with each other, arising out of their joint employment by Oak Hill Capital Partners.

70. The entirety of the Board is further conflicted because they each face a substantial likelihood of liability as a result of their position on the Board.

71. Demand on the eight-member Board is thus futile. All members face a substantial likelihood of liability. Further, Directors Bronfman, Cline, Nayden, Wolfson, and Spiegel have at minimum, personal and professional ties with each other, which prevent them from objectively considering demand. Demand is thus excused.

## COUNT I

### Derivatively Against the Individual Defendants for Breach of Fiduciary Duty

72.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

73.     Each of these Defendants owed and owes Accretive fiduciary obligations.  By reason of their fiduciary relationships, Defendants owed and owe Accretive the highest obligation of loyalty, good faith, due care, oversight, fair dealing, and candor.

74.     These Defendants, and each of them, violated and breached their fiduciary duties of loyalty, good faith, due care, oversight, fair dealing, and candor.

75.     Each of these Defendants had actual or constructive knowledge that they had caused the Company to incur significant risk by violating federal and state law, and failed to conduct the proper oversight of Accretive's activities.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

76.     The Individual Defendants caused or allowed Accretive to lack requisite internal controls, and, as a result, Accretive is potentially liable for civil damages and criminal fines.

77.     The Individual Defendants failed to supervise, and to exert internal controls over, and consciously disregarded responsibilities involving the Accretive.

78.     As a direct and proximate result of the defendants' failure to perform their fiduciary obligations, Accretive has sustained and will sustain significant damages.

79.     As a result of the misconduct alleged herein, these Defendants are liable to the Company.

## COUNT II

### Derivatively Against the Individual Defendants for Abuse of Control

80.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

81.     These Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Accretive, for which they are legally responsible.  Among the abuses of control was these Defendants' failure to supervise and to exert internal controls over the Company, and conscious disregard of federal and state law.

82.     As a direct and proximate result of these Defendants' abuse of control, Accretive has sustained and will sustain significant damage.

83.     As a result of the misconduct alleged herein, these Defendants are liable to the Accretive.

## COUNT III

### Derivatively Against the Individual Defendants for Gross Mismanagement

84.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

85.     By their actions alleged herein, these Defendants, either directly or through aiding and abetting one another, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Accretive in a manner consistent with the operations of a publicly held corporation.

86.     The Individual Defendants caused or allowed Accretive to lack requisite internal controls, and, as a result, Accretive is potentially liable for civil penalties and criminal fines.

87.     The Individual Defendants failed to supervise, and to exert internal controls over, and consciously disregarded responsibilities involving the compliance with federal and state law.

88.     The Individual Defendants did not take seriously their primary responsibility for Accretive's compliance with federal and state law.

89.     As a direct and proximate result of these Defendants' gross mismanagement and breaches of duty alleged herein, Accretive has sustained and will sustain significant damages.

90.     As a result of the misconduct and breaches of duty alleged herein, these Defendants are liable to Accretive.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment as follows:

A.     Against all Defendants and in favor of Accretive for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties, abuse of control, and gross mismanagement.

B.     Directing Accretive to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect the Company and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions amendments to the By-Laws and Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote the following Corporate Governance Policies, including measures to:

i.     Strengthen the Board's supervision of regulatory compliance by the Company, including the development of procedures for greater shareholder input into the policies;

ii. The creation of a Public Policy Committee, empowered to ensure compliance with applicable federal and state law;

iii. Mandate that the Public Policy Committee meet at least four times annually to review the Company's compliance with legal, regulatory, and ethical norms, including "best practices" in connection with hospital revenue collections;

iv. Permit the Accretive shareholders to nominate at least four candidates to the Board of Directors;

v. Remove J. Michael Cline from his position on the Board of Directors;

vi. Permanently separate the offices of Chairman and CEO.

vii. Appropriately test and audit Accretive's compliance with federal and state law.

C. Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses;

D. And such other relief as this Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: July 31, 2012

**SUSMAN HEFFNER & HURST LLP**

By: _____/s/ Matthew T. Heffner_____
Matthew T. Heffner
Glenn L. Hara
30 N. LaSalle Street, 12th Floor
Chicago, Illinois 60602
Telephone: (312) 346-3466
Fax: (312) 346-2829

**KAHN SWICK & FOTI, LLC**
Lewis S. Kahn (*pro hac vice* application to be filed)
lewis.kahn@ksfcounsel.com
Albert M. Myers (*pro hac vice* application to be filed)
albert.myers@ksfcounsel.com
Melinda A. Nicholson (*pro hac vice* application to be filed)
melinda.nicholson@ksfcounsel.com
206 Covington Street
Madisonville, Louisiana 70447
Telephone: (504) 455-1400
Fax: (504) 455-1498

*Attorneys for Plaintiff*